```
                 IN THE UNITED STATES DISTRICT COURT

                      FOR THE DISTRICT OF HAWAII

ROBERT M. CLEMMONS,            )   CIVIL NO. 10-00513 SOM/BMK
                               )
          Plaintiff,           )   ORDER GRANTING DEFENDANTS'
                               )   MOTION TO (1) DISMISS
     vs.                       )   PLAINTIFF'S COMPLAINT AGAINST
                               )   DIANE KENT, (2) DISMISS COUNT
HAWAII MEDICAL SERVICES        )   IV, AND (3) STRIKE PARAGRAPHS
ASSOCIATION, a Hawaii          )   69 AND 70 OF THE COMPLAINT
corporation, KUHIO MEDICAL     )
CENTER, a Hawaii corporation,  )
HAWAII FAMILY MEDICAL          )
CENTERS, a Hawaii              )
corporation, INTEGRATED        )
SERVICES, INC., a Hawaii       )
corporation, DIANE KENT, and   )
DOES 1-20,                     )
                               )
          Defendants.          )
_____)
```

ORDER GRANTING DEFENDANTS' MOTION TO (1) DISMISS PLAINTIFF'S
 COMPLAINT AGAINST DIANE KENT, (2) DISMISS COUNT IV, AND
       (3) STRIKE PARAGRAPHS 69 AND 70 OF THE COMPLAINT

I.     INTRODUCTION.

       Plaintiff Robert Clemmons brings this discrimination action, protesting allegedly unfair treatment by his employer, as well as his allegedly forced resignation. On motion by Defendants, the court now dismisses the claims for Title VII liability on the part of the lone individual Defendant, dismisses Clemmons's negligence cause of action, and strikes certain statements referring to national origin and age discrimination.

II.    FACTUAL BACKGROUND.

       Robert Clemmons is a Caucasian male who was employed by Defendant Hawaii Family Medical Centers ("HFMC") at its clinic,

Kuhio Medical Center ("KMC"), on Kauai for 16 years. HFMC is a wholly owned subsidiary of Defendant Integrated Services, Inc. ("ISI"), which, in turn, is a wholly owned subsidiary of Defendant Hawaii Services Association ("HMSA"). Clemmons alleges that he was constructively discharged on or about April 8, 2009. Compl. ¶¶ 1-2, 24. The Complaint does not state Clemmons's job title, but indicates that he performed x-rays for patients, including instructing patients on procedures for removal of clothing and use of lead aprons during the x-rays. Id. ¶ 27. Clemmons suffers from macular degeneration in both eyes. Id. ¶ 4. This disability, he alleges, did not impair his ability to perform his duties. Id. Clemmons is married and was 55 years old when he resigned. See id. ¶¶ 22, 24.

Clemmons alleges that, while employed at KMC, he was "subjected to constant verbal harassment and derogatory comments" from female, nonwhite clinic managers regarding his marital status. Id. ¶ 2. He also alleges that he was treated differently by being required to perform menial manual labor tasks not requested of female employees, such as cleaning up bathroom messes or carrying boxes from a manager's car. Id. ¶ 2. Nevertheless, Clemmons alleges, he received regular salary increases and favorable employment reviews until Defendant Diane Kent became his manager. Id. ¶ 13.

According to Clemmons, upon becoming his manager at

some unstated time, Kent "increased the pattern of discriminatory conduct." Id. ¶ 2. Clemmons alleges that Kent reduced Clemmons's scheduled annual pay raise, even though there was no problem with his employment. Id. ¶ 20. Clemmons alleges that Kent did not reduce female, nonwhite employees' pay raises. Id. Clemmons alleges that Kent denied pay to Clemmons for overtime work, altered his overtime cards, and made it difficult in various other ways for him to obtain overtime. Id. ¶ 21. Clemmons alleges that Kent did not subject female, nonwhite employees to similar treatment. Id.

Clemmons alleges that Kent told Clemmons in front of other employees that Clemmons was not as smart or experienced as the female, nonwhite employees and that he would always be an outsider. Id. ¶ 2. He alleges that Kent also made derogatory remarks in front of employees and patients about Clemmons's disability, his ability to see, and the effect of his disability on his ability to work. Id. ¶ 23.

Clemmons alleges that Kent sexually harassed Clemmons by making inappropriate comments regarding his marital status and his wife and by sitting uncomfortably close to Clemmons. Id. ¶ 22. He alleges that Kent "jealous[ly] . . . degrad[ed] him for politely saying goodbye to a departing female intern." Id. ¶ 26.

According to Clemmons, after he complained about Kent's conduct to HMSA management, Kent retaliated by excluding him from

3

company activities, falsely accusing him of sexually harassing female patients, and, ultimately, setting Clemmons up so he would be forced to resign. Id. ¶¶ 2-3, 25.

Clemmons alleges that, on March 23, 2009, Kent and several nurses denied Clemmons a female chaperone to assist with an x-ray of a female patient, even though clinic protocol called for a female chaperone. Id. ¶ 28. The patient left because of the delay, and Kent reported Clemmons to supervisors for failing to perform the x-ray. Id. After Clemmons contacted the patient to apologize, he was asked to leave the premises for violating the patient's privacy rights. Id. On April 28, 2009, Clemmons was told that he would be terminated as a result of the incident, or that he could resign. Id. ¶ 29. Clemmons resigned. Id.

Clemmons asserts statutory claims for racial and gender discrimination, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17. Compl. ¶¶ 30-48. Additionally, Clemmons asserts common law claims for breach of contract, promissory estoppel, and negligence against all Defendants except Kent. Id. ¶¶ 49-67. Clemmons seeks declaratory judgment and injunction granting reinstatement, as well as back pay, benefits, compensatory damages, punitive damages, and attorneys' fees. Id. at 20.

III.     STANDARDS.
        A.  Rule 12(b)(6) of the Federal Rules of Civil
            Procedure.

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of a complaint, or a claim therein, when a claimant fails "to state a claim upon which relief can be granted." Dismissal under Rule 12(b)(6) may be based on either: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988) (citing Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34 (9th Cir. 1984)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" That is, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556, 570 (2007); see Evanns v. AT&T Corp., 229 F.3d 837, 839 (9th Cir. 2000).

Under Rule 12(b)(6), the court's review is generally limited to the contents of the complaint. See Marder v. Lopez, 450 F.3d 445, 448 (9th Cir. 2006); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). All allegations of

material fact are taken as true and construed in the light most favorable to the nonmoving party. See Knievel v. ESPN, 393 F.3d 1068, 1072 (9th Cir. 2005). Conclusory allegations and unwarranted inferences, however, are insufficient to defeat a motion to dismiss. See Sanders v. Brown, 504 F.3d 903, 910 (9th Cir. 2007); Cholla Ready Mix, Inc. v. Civish, 382 F.3d 969, 973 (9th Cir. 2004).

In particular, the court should "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 129 S. Ct. at 1950. The court should disregard "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . ." Id. at 1949. After eliminating such unsupported legal conclusions, the court must identify "well-pleaded factual allegations," which are assumed to be true, "and then determine whether they plausibly give rise to an entitlement to relief." Id. at 1950.

  B. Rule 12(f) of the Federal Rules of Civil Procedure.

Rule 12(f) of the Federal Rules of Civil Procedure provides that the "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The function of a 12(f) motion is to avoid the waste of time and money spent on litigating spurious issues by dispensing with those issues before

trial. <u>Sidney-Vinstein v. A.H. Robins Co.</u>, 697 F.2d 880, 885 (9th Cir. 1983). Grounds for a motion to strike must be readily apparent from the face of the pleadings or from materials that may be judicially noticed. <u>Wailua Assocs. v. Aetna Cas. & Sur. Co.</u>, 183 F.R.D. 550, 554 (D. Haw. 1998).

A matter will not be stricken from a pleading unless it is clear that it can have no possible bearing on the subject matter of the litigation. <u>Id.</u> A matter is "immaterial" if it "has no essential or important relationship to the claim for relief or the defenses being pleaded." <u>Fantasy, Inc. v. Fogerty</u>, 984 F.2d 1524, 1527 (9th Cir. 1993), <u>rev'd on other grounds</u>, 510 U.S. 517 (1994); 5A Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1382 (3d ed. 2004). Impertinent matter consists of statements that do not pertain, and are not necessary, to the issues in question. <u>Wailua Assocs.</u>, 183 F.R.D. at 553 (noting that an allegation is impertinent when it is irrelevant). Thus, courts will generally grant a motion to strike only when the moving party has proved that the matter to be stricken could have no possible bearing on the subject matter of the litigation. <u>See</u> <u>Cal. Dep't of Toxic Substances Control v. Alco Pac., Inc.</u>, 217 F. Supp. 2d 1028, 1033 (C.D. Cal. 2002); <u>LeDuc v. Kentucky Cent. Life Ins. Co.</u>, 814 F. Supp. 820, 830 (N.D. Cal. 1992).

IV.     ANALYSIS.

   A.  Claims Against Diane Kent.

Defendants argue that Kent should be dismissed from the suit because she has no personal liability under Title VII, the only basis on which she is sued. The court agrees. The Ninth Circuit ruled nearly twenty years ago that individuals may not be sued for damages under Title VII. See Miller v. Maxwell's Int'l Inc., 991 F.2d 583, 588 (9th Cir. 1993). In Miller, a former employee sought to sue, inter alia, six former coworkers and supervisors for sex and age discrimination, as well as retaliation, under Title VII and other federal labor statutes. Id. at 584. The district court granted the individual defendants' motion to dismiss, and the Ninth Circuit affirmed. Id. at 588. The Ninth Circuit determined that the statutory scheme of Title VII, which limited liability to employers with 15 or more employees, demonstrated that "Congress did not want to burden small entities with the costs associated with litigating discrimination claims." Id. at 587. Given this limitation, the court found it "inconceivable" that Congress intended to allow individual employees to be sued under Title VII. Id.

Clemmons alleges that Kent, "acting as an agent and employee of [the Corporate Defendants]," discriminated against Clemmons because of his gender and his race. See, e.g., Compl.

¶¶ 30, 43. In his Opposition, Clemmons appears to concede that Title VII precludes his claims against Kent. See Opp. at 15 (acknowledging that "some of Plaintiff's claims against Ms. Kent may be precluded under Title VII"). Clemmons's citation to out-of-circuit authority to the contrary, as well as his argument that Hawaii employment law (under which he brings no claim) would permit his claims against Kent, Opp. at 15-16, do not persuade the court to depart from well-established precedent. Kent is dismissed from this lawsuit.

    B.    <u>Negligence (Count IV).</u>

In the fourth cause of action, for negligent employment, Clemmons alleges that HMSA, KMC, HFMC, and ISI failed to:

> (1) properly and adequately train their managerial employees, including Defendant Kent, to properly respond to complaints of sexual harassment;
>
> (2) properly and adequately train their managerial employees, including Defendant Kent, to prohibit discriminatory employment practices, including discrimination based on gender, race, age or disability;
>
> (3) carefully and diligently supervise their employees, including Defendant Kent, to prevent them from improperly handling complaints of sexual harassment and/or conducting the investigation in a nondiscriminatory manner;
>
> (4) implement or take appropriate remedial action once they knew or should have known that their employees were mishandling complaints of sexual harassment and/or

>                conducting the investigation in a
>                nondiscriminatory manner;
>
>                (5) conduct a reasonable, proper and
>                appropriate investigation.

See Compl. ¶ 65. Defendants argue that Clemmons fails to state a claim for negligent employment because such claim is barred by Hawaii Revised Statutes § 386-5. Mot. at 7-10. The court agrees.

Section 386-5 sets forth the exclusivity of Hawaii's Workers' Compensation Law, found in chapter 386 of Hawaii Revised Statutes, as follows:

> The rights and remedies herein granted to an
> employee . . . on account of a work injury
> suffered by the employee shall exclude all
> other liability of the employer to the
> employee . . . on account of the injury,
> except for sexual harassment or sexual
> assault and infliction of emotional distress
> or invasion of privacy related thereto, in
> which case a civil action may also be
> brought.

See Haw. Rev. Stat. § 386-5 ("exclusivity provision"). Generally, section 386-5 "serves to bar a civil action for physical and emotional damages resulting from work-related injuries and accidents." Furukawa v. Honolulu Zoological Society, 85 Haw. 7, 16-19, 936 P.2d 643, 652-55 (1997).

In keeping with the statute's plain language, courts have enforced the exclusivity provision to bar common law claims for both physical and psychic injuries resulting from workplace conduct. See Nelson v. Univ. of Haw., 97 Haw. 376, 393, 38 P.3d

95, 112 (2001).  For example, in <u>Kamaka v. Goodsill Anderson Quinn & Stifel</u>, 117 Haw. 92, 176 P.3d 91 (2008), an attorney sued her former law firm after she was accused of fraudulent billing practices and fired.  117 Haw. at 100, 176 P.3d at 99.  She claimed, <u>inter alia</u>, that the law firm had breached a duty it owed her to properly investigate the allegations of fraudulent billing, and that the law firm's negligence had caused mental and emotional distress.  117 Haw. at 101, 176 P.3d at 100.

The trial court dismissed the "negligent investigation of billing practices" cause of action as barred by the Workers' Compensation Law's exclusivity provision, and the Hawaii Supreme Court affirmed.  117 Haw. at 101, 176 P.3d at 100.  On a "plain reading" of the statute, the Supreme Court reasoned, the plaintiff's claim was "unambiguously" barred because she sought recovery for emotional distress that was unrelated to matters such as sexual harassment or sexual assault that were exempted from the scope of chapter 386.  117 Haw. at 109, 176 P.3d at 108.

Similarly, here, Clemmons alleges that HMSA, KMC, HFMC, and ISI owed him a duty to prevent other employees from harming him, and that those Defendants breached their duty of care by failing to train Kent to refrain from discriminating against him, failing to train and supervise Kent, and failing to adequately

11

investigate sexual harassment complaints.  See Compl. ¶¶ 62, 65.[1]
Clemmons alleges generally that he suffered "injuries, damages
and harm."  Id. ¶ 66.  Clemmons's claim of negligence in failing
to prevent the alleged acts of Kent is barred by the exclusivity
provision.  Accord Kahale v. ADT Automotive Serv., Inc., 2 F.
Supp. 2d 1295, 1302 (D. Haw. 1998) (holding that section 386-5
bars common law recovery for employer's negligent infliction of
emotional distress).

Although section 386-5 does contain a limited exception
allowing civil claims for "sexual harassment or sexual assault
and infliction of emotional distress or invasion of privacy
related thereto," that exception is inapplicable here.  Clemmons
has no claim that falls within the enumerated causes of action
carved out by the exception.  In construing the sexual harassment
exception, this court's duty is to ascertain the legislature's
intent, "which is to be obtained primarily from the language
contained in the statute itself."  See Nelson, 97 Haw. at 393, 38
P.3d at 112 (quoting Korsak v. Haw. Permanente Med. Group, 94
Haw. 297, 303, 12 P.3d 1238, 1244 (2000)).  Clemmons does not

---

[1] Section 386-5's exclusivity provision does not apply to bar claims of discrimination, for which Hawaii has established a separate set of statutes and remedies, including a civil remedy in court.  See Haw. Rev. Stat. §§ 378-1 to 378-10; id. § 368-17(b) (permitting discrimination claim notwithstanding section 386-5).  However, in this case Clemmons does not pursue any claim under Hawaii's anti-discrimination statutes, electing instead to proceed exclusively under Title VII and Hawaii common law.

12

assert claims for sexual harassment, sexual assault, negligent infliction of emotional distress, intentional infliction of emotional distress, or invasion of privacy. Clemmons is not basing his negligence claim on a respondeat superior theory. Rather than seeking to hold his employer liable for Kent's alleged conduct, Clemmons claims breaches of independent duties to supervise and train employees and to handle investigations of sexual harassment properly. As such claims are clearly separable from actual sexual harassment, they fall far outside the plain language of the sexual harassment exception to the exclusivity provision. Cf. Nelson, 97 Haw. at 395, 38 P.3d at 114 (explaining that a negligent infliction of emotional distress cause of action "related to" a sexual harassment claim because both were "premised on the same conduct").

To the extent Black v. City & County of Honolulu, 112 F. Supp. 2d 1041 (D. Haw. 2000), represents a more expansive view of the sexual harassment exception, the court respectfully disagrees with that decision. See id. at 1047-48 (permitting claims of negligent hiring and retention that allegedly led to plaintiff's sexual harassment by a supervisor). As discussed above, this judge reads the plain language of the sexual harassment provision as exempting sexual harassment itself from chapter 386's exclusivity, not as exempting the distinguishable situation involving negligent training about sexual harassment.

13

Moreover, the legislative history of the 1992 amendment that added the sexual harassment language to section 386-5 does not reflect an intent by the legislature to permit all claims "intertwined" with sexual harassment.  See Black, 112 F. Supp. 2d at 1048.

While the state House of Representatives originally contemplated an amendment that would permit claims for "intentional infliction of emotional distress, invasion of privacy, wrongful discharge or negligence" to be asserted in court, see Standing Comm. Rep. No. 766, reprinted in 1991 House Journal, at 1107, Standing Comm. Rep. No. 2588, reprinted in 1992 Senate Journal, at 1155, the final Committee Report dropped language related to negligence and wrongful discharge.  Instead, the law that was passed focused on claims for harassment, assault, emotional distress, and invasion of privacy as not covered by chapter 386's exclusivity provision.  See H.R. Conf. Comm. Rep. No. 21, reprinted in 1992 House Journal, at 799 ("Under this bill an employee who has been subjected to sexual harassment or sexual assault and injured thereby would be entitled to workers' compensation benefits and may still be able to recover damages for the harassment or assault and the related infliction of emotional distress or invasion of privacy.").  This is the language reflected in the final version of the amendment, and Clemmons's reading of the statute would require expanding the

14

amendment by adding language that was never included.  Whatever the legislature's reason for narrowing the scope of the contemplated exception, the court is required to apply the law in its final form.

Nor does the court find Black v. Correa, Civ. No. 07-00299 DAE/LEK, 2007 WL 3195122 (D. Haw. Oct. 30, 2007), relied on by Clemmons in his opposition, persuasive.  This case does not address the applicability of the exclusivity provision because the defendants in that case never raised the issue before the court.  See generally id. at *7-*11.

Finally, although Hawaii state courts have not yet considered the issue, the court's conclusion today is in accordance with decisions in other cases in this district holding that section 386-5 bars common law negligent employment claims arising out of allegations of discrimination.  See, e.g., Antoku v. Hawaiian Elec. Co., Inc., 266 F. Supp. 2d 1233, 1236-37 (D. Haw. 2003) (granting summary judgment to employer on claims of negligent supervision, negligent training, failure to prevent discrimination, and failure to investigate and remedy discrimination, on grounds that these claims are barred by section 386-5); Beaulieu v. Northrop Grumman Corp., 161 F. Supp. 2d 1135, 1148 (D. Haw. 2000) (holding that section 386-5 barred negligent supervision and negligent retention claims arising out of alleged discrimination), aff'd, 23 Fed. Appx. 811 (9th Cir.

15

2001). While the Ninth Circuit's affirmance of <u>Beaulieu</u> is not binding authority on this court, <u>see</u> 9th Cir. R. 36-3, the court gives weight to the Ninth Circuit's review of facts similar to those presented here and its agreement that a negligent employment claim was barred by section 386-5.

Because the court agrees that section 386-5 does not permit Clemmons to allege a common law claim for negligence, the court need not consider Defendants' alternative argument that Hawaii's discrimination laws, Haw. Rev. Stat. §§ 378-1 to 378-10, also preempt Clemmons's common law negligent employment claims. <u>See</u> Mot. at 10-12.

    C.    <u>National Origin and Age Discrimination Allegations.</u>

Finally, Defendants move to strike, or, in the alternative, to dismiss allegations in the Complaint related to national origin and age discrimination claims. Mot. at 12-15. Under a section headed "Additional Parties and/or Claims," paragraphs 69 and 70 of the Complaint allege:

> 69. Mr. Clemmons was at the time of his termination the only white male employee at KMC. He believes that the employer wanted to eliminate him and his position at KMC entirely. Mr. Clemmons does not currently have sufficient information to determine whether or not his termination was the result of intentional national origin discrimination.
>
> 70. Mr. Clemmons was at the time of his termination the only white employee at KMC who was over the age of approximately 35 (he

> was 55 years of age) other than perhaps one
> independent contract physician. He does not
> have sufficient current information to know
> whether any individual replaced him or their
> age, nor does he have sufficient information
> to determine whether or not his termination
> was the result of intentional age
> discrimination.

The Complaint then requests leave to amend the Complaint to add additional parties or additional claims after completing initial discovery. Compl. ¶ 71. The court concludes that the allegations are immaterial and impertinent and should be stricken.

The Complaint does not attempt to assert a claim for national origin discrimination, see 42 U.S.C. § 2000e-2(a), nor could it under the facts pled. Defendants note--and Clemmons does not contest--that paragraph 69 constitutes the sole mention of national origin discrimination in the 72-paragraph Complaint. See Reply at 5. Clemmons does not even plead his national origin, saying only that he is "white." See Espinoza v. Farah Mfg. Co., Inc., 414 U.S. 86, 88-89 (national origin is synonymous with ancestry); Dawavendewa v. Salt River Project Agric. Improvement & Power Dist., 154 F.3d 1117, 1119 (9th Cir. 1998) (explaining that national origin discrimination refers to discriminatory practices based on where one's ancestors lived). Clemmons points to no allegations suggesting that the disparate treatment or adverse action he allegedly faced was based on his national origin. Indeed, Clemmons himself states that he "does

17

not currently have sufficient information to determine whether or not his termination was the result of intentional national origin discrimination." Compl. ¶ 69. Clemmons's reference to national origin discrimination is presently unsupportable. The court therefore finds no "well-pleaded factual allegations" in the Complaint that could "plausibly give rise to an entitlement to relief" on a claim for national origin discrimination. See Iqbal, 129 S. Ct. at 1950.

Similarly, Clemmons's suggestion that he may have been harassed to force him to resign before becoming eligible for early retirement is not an allegation of fact, but merely a conclusion not entitled to an assumption of truth. Id. Beyond that speculation, the Complaint alleges only the barest facts connecting Clemmons's age to his termination: (1) that Clemmons was approaching 55 years old when he was harassed on the basis of his race, gender, disability, and marriage status; (2) that Clemmons was 55 years old when he was terminated; and (3) that Clemmons was one of only two white males over 35 who worked at KMC. See Compl. ¶¶ 24, 70. While these allegations may be consistent with a claim of age discrimination, they do not, standing alone, raise Clemmons's right to relief to the level of plausibility. In other words, these facts do not permit a reasonable inference that age discrimination occurred. See Twombly, 550 U.S. at 555 ("[f]actual allegations must . . . raise

18

a right to relief above the speculative level"). Accord Compl. ¶ 70 (acknowledging that Clemmons "does not have sufficient information to determine whether or not his termination was the result of intentional age discrimination").

Because Clemmons has not alleged claims for either national origin or age discrimination, these allegations are neither material nor pertinent to his Complaint. See Fantasy, Inc., 984 F.2d at 1527; Wailua Assocs., 183 F.R.D. at 553 (irrelevant allegations are impertinent). The court therefore grants Defendants' motion to strike paragraphs 69 and 70 of the Complaint. If and when Clemmons obtains facts supporting the inference that his termination related to his national origin or his age, he may seek to amend his Complaint in accordance with Rules 11 and 15 of the Federal Rules of Civil Procedure as well as Rule 10.3 of this district's Local Rules, to properly allege such claims.

V.      CONCLUSION.

For the reasons above, the court GRANTS Defendants' motion to dismiss and to strike.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, January 28, 2011.



/s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge

Clemmons v. Hawaii Medical Services Association; Civil No. 10-00513 SOM/KSC; ORDER
GRANTING DEFENDANTS' MOTION TO (1) DISMISS PLAINTIFF'S COMPLAINT AGAINST DIANE KENT,
(2) DISMISS COUNT IV, AND (3) STRIKE PARAGRAPHS 69 AND 70 OF THE COMPLAINT